IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JONI R. DOWNING,                    )
                                    )
                  Plaintiff,        )
                                    )   CIVIL ACTION
v.                                  )
                                    )   No. 05-2058-JWL-JTR
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
                  Defendant.        )
_____)


REPORT AND RECOMMENDATION


Plaintiff is a pro se party seeking judicial review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and the case be REMANDED for rehearing.

I.  Background

On Aug. 30, 2002, plaintiff filed applications for supplemental security income and disability insurance benefits which were denied by the Social Security Administration initially and after reconsideration.  (R. 14, 30, 31, 91-93, 186-89, 190, 192).  Plaintiff requested a hearing before an Administrative Law Judge, which was held on Sept. 16, 2004. (R. 14, 45-46, 204-46).  At the hearing plaintiff appeared without representation, waived representation, and testified. (R. 14, 204-08).[1]  Also testifying at the hearing were a vocational expert and Dr. Sheldon Steiner, a medical expert. (R. 14, 79-90, 213-46).

On Oct. 14, 2004, the ALJ issued a decision denying plaintiff's applications.  (R. 14-20).  In the decision, the ALJ found that plaintiff has not engaged in gainful activity since the alleged onset of disability on Feb. 1, 2001.  (R. 14-15).  She found that plaintiff has impairments consisting of mild nerve compression in the neck and mild ulnar elbow compression, impairments which are "severe" within the meaning of the Act, but which do not meet or equal the severity of any

---

[1]Plaintiff had previously been represented by an attorney (R. 47-50, 68-69, 71, 199-203), but implied that she had terminated his service because "He was harassing me."  (R. 207).

impairment in the Listing of Impairments--20 C.F.R., Pt. 404, Subpt. P, App. 1.  (R. 17).

The ALJ found plaintiff's allegations of limitations "not totally credible" (R. 19), accepted the opinion of the medical expert, and found that plaintiff has the residual functional capacity (RFC) for a full range of light work--maximum lifting twenty pounds, frequently lifting ten pounds, sit, stand, and walk about six hours each in a workday.  (R. 18).  She found that plaintiff can occasionally perform overhead reaching with the right arm, and should avoid reaching behind her back with her right arm, but she has no other limitations.  (R. 18). Based upon her RFC assessment, vocational considerations, and the testimony of the vocational expert, the ALJ found that plaintiff is capable of performing her past relevant work as a clerical worker, data entry operator, money collector, and customer service representative; and concluded that she is not "disabled" as defined in the Act.  (R. 18-19).  Therefore, she denied plaintiff's applications.  (R. 20).

Plaintiff disagreed with the decision and sought review by the Appeals Council.  (R. 9-10).  The Appeals Council denied plaintiff's request for review.  (R. 6-8).  Therefore, the ALJ's decision is the final decision of the Commissioner for judicial review.  (R. 6); <u>Threet v. Barnhart</u>, 353 F.3d

1185, 1187 (10th Cir. 2003).  Plaintiff filed a petition
seeking judicial review.

   Plaintiff did not file her initial brief in this court
within the time frame required by District of Kansas Local
Rule 83.7(d), and the court ordered plaintiff to file a brief
before Aug. 12, 2005.  (Doc. 6).  Plaintiff's brief was
docketed as a "Response" to the Court's show cause order (Doc.
8), and the court determined the "Response" constituted
plaintiff's brief.  (Doc. 9).  The Commissioner has filed her
brief (Doc. 11), and the cause is ripe for review.

## II.  Legal Standard

   The court's review is guided by the Act.  42 U.S.C.
§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings
of the Commissioner as to any fact, if supported by
substantial evidence, shall be conclusive."  The court must
determine whether the factual findings are supported by
substantial evidence in the record and whether the ALJ applied
the correct legal standard.  White v. Barnhart, 287 F.3d 903,
905 (10th Cir. 2001).  Substantial evidence is more than a
scintilla, but less than a preponderance, it is such evidence
as a reasonable mind might accept to support the conclusion.
Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The
court may "neither reweigh the evidence nor substitute [it's]

-4-

judgment for that of the agency." White, 287 F.3d at 905

(quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d

799, 800 (10th Cir. 1991)).  The determination of whether

substantial evidence supports the Commissioner's decision,

however, is not simply a quantitative exercise, for evidence

is not substantial if it is overwhelmed by other evidence or

if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-

05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     An individual is under a disability only if that

individual can establish that she has a physical or mental

impairment which prevents her from engaging in substantial

gainful activity and is expected to result in death or to last

for a continuous period of at least twelve months.  42 U.S.C.

§ 423(d).  The claimant's impairments must be of such severity

that she is not only unable to perform her past relevant work,

but cannot, considering her age, education, and work

experience, engage in any other substantial gainful work

existing in the national economy.  Id.

The Commissioner has established a five-step sequential

process to evaluate whether a claimant is disabled.  20 C.F.R.

§§ 404.1520, 416.920 (2004); Allen v. Barnhart, 357 F.3d 1140,

1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a

determination can be made at any of the steps that a claimant

is or is not disabled, evaluation under a subsequent step is
not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th
Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity
since the alleged onset, whether she has severe impairments,
and whether the severity of her impairments meets or equals
the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App.
1). Id. at 750-51.  The Commissioner next assesses claimant's
RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used
at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner
evaluates steps four and five--whether the claimant can
perform her past relevant work, and whether she is able to
perform other work in the national economy.  Williams, 844
F.2d at 751.  In steps one through four the burden is on
claimant to prove a disability that prevents performance of
past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184
(10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step
five, the burden shifts to the Commissioner to show other jobs
in the national economy within plaintiff's capacity.  Id.;
Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

A <u>pro se</u> plaintiff's pleadings are to be construed liberally and are held to a less stringent standard than pleadings drafted by lawyers. <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991)(citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). The court will recognize and consider a <u>pro se</u> plaintiff's claims despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. <u>Id.</u> But, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." <u>Id.</u> Therefore, the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues," <u>Drake v. City of Ft. Collins</u>, 927 F.2d 1156, 1159 (10th Cir. 1991); or "supply additional factual allegations to round out plaintiff's complaint or construct legal theory on plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Plaintiff makes numerous claims of error. She claims the Appeals Council is not "a legal court under the constitution" because plaintiff or her representative were not allowed to physically appear before the Council. (Pl. Br., 1).[2] She

---

[2]The court cites to plaintiff's brief as numbered by plaintiff, rather than the page numbers assigned by the court's electronic case filing system (CM/ECF).

claims the ALJ erred in making a decision which is not
"medically correct" (Pl. Br., 3), accepted fraudulent
testimony from an unqualified medical expert, and was abusive
to plaintiff--allowing her to speak only when spoken to.  (Pl.
Br., 2-3).  Plaintiff claims the medical expert's testimony
revealed he was not qualified, and he provided fraudulent
testimony.  (Pl. Br. 2-5).  Plaintiff seeks past due benefits
and punitive damages.  (Pl. Br., 5).  The Commissioner argues
that the ALJ properly determined plaintiff's allegations are
not credible and properly evaluated the opinion of the medical
expert, and that substantial evidence in the record supports
the decision.

**III.      Due Process**

Plaintiff's claim that the Appeals Council is not a legal
court because she could not physically appear before it
constitutes an argument that she was denied due process of law
pursuant to the Fifth Amendment of the United States
Constitution.  Due process requires that an individual be
afforded a meaningful opportunity to be heard, to present
one's case and to confront and cross-examine adverse
witnesses.  Goldberg v. Kelly, 397 U.S. 254, 268-270 (1970).

The Social Security Act requires that a claimant who has
been denied benefits may be given an evidentiary hearing.  42

-8-

U.S.C. §§ 405(b), 1383(c).  By regulations, the Commissioner has implemented Congress's intent that evidentiary hearings be made available in such cases.  20 C.F.R. §§ 404.950, 416.1450 (2004).  Where a claimant disagrees with the decision of the ALJ, she may seek review by the Appeals Council, and may request oral argument before the Appeals Council.  Id. §§ 404.967, 404.976, 416.1467, 404.1476.  The Act provides that the final decision of the Commissioner may be reviewed by the District Court.  42 U.S.C. §§ 405(g), 1383(c)(3).

Here, plaintiff sought review by the Appeals Council, but did not seek oral argument.  Therefore, she cannot now complain that she was denied the opportunity to physically appear before the Appeals Council.  In any case, review was denied by the Appeals Council, and the ALJ's decision is the final decision of the Commissioner.  Therefore, plaintiff's hearing before the ALJ was an evidentiary hearing before the final decision-maker and is all that is required by due process, the Social Security Act, or the regulations.  The court finds no due process violation.

**IV.  Medical Expert Testimony**

Plaintiff claims Dr. Steiner was not qualified to testify as a medical expert in this case, or was giving fraudulent testimony, because he did not recognize the problem with

-9-

plaintiff's clavicle, did not recognize that breathing problems may be associated with the clavicular problem present here, and is not qualified to perform the surgery necessary to correct the problems presented.  The Commissioner argues that Dr. Steiner is board-certified in internal medicine and cardiology, and properly explained the basis for his opinions. (Comm'r Br., 8-9)  She argues that the ALJ noted Dr. Steiner's opinion is consistent with the medical evidence of record. Id., at 9.

As the Commissioner asserts, Dr. Steiner is board-certified in internal medicine and cardiology.  (R. 213, 83). The ALJ found that Dr. Steiner was qualified to testify as a medical expert.  (R. 213).  The physician's Curriculum Vitea supports that finding.  (R. 81-90).  The physician has extensive experience in medicine--academic, clinical, public service, and private practice--since his graduation from medical school in 1956.  Id.  The physician has published work in the field.  (R. 86-90).

The record also provides some support for plaintiff's claims.  As plaintiff argues, the physician twice stated that breathing is not involved in this case.  (R. 213, ("Breathing has nothing to do with any of this.") 223 ("Breathing has nothing to do with that.")).  The physician is not a

neurosurgeon and does not perform surgery on thoracic outlet syndrome. (R. 221, 223, 225). However, plaintiff seems to have misunderstood much of the physician's testimony.

Plaintiff argues that the physician did not recognize the problem with her clavicle. However, the physician testified that he gave plaintiff the benefit of the doubt regarding her "thoracic outlet syndrome" and described it as "compression of the brachial artery due to deformity of her clavicle." (R. 218-19). He then opined that plaintiff would be limited to lifting her right arm overhead only occasionally and would be precluded from reaching behind her back with her right arm. (R. 219).

The physician recognized the problem. The fact that he does not view it as limiting as plaintiff is not justification to exclude his testimony. Plaintiff does not present any evidence showing her personal qualification as a medical expert. In her brief, she gives an "explanation of what the most recent doctors have told me," (Pl. Br., 3) but she does not point to any evidence in the record such as affidavits from physicians, and she does not cite to medical journals or other medical authority to support her argument. Plaintiff presents no evidence other than her personal opinion that the medical expert's testimony is erroneous in any way.

-11-

The medical expert explained his testimony.  He stated that Dr. Mendlick's notes indicate only a partial or occasional obstruction because it was reproduced "two out of three times on different occasions." (R. 220).  He acknowledged that plaintiff has a minor thoracic outlet syndrome but testified that surgeons do not do surgery on such things "unless there's some serious impairment with atrophy, permanent numbness and muscle weakness of the extremity." (R. 221).  He explained that thoracic outlet syndrome could not cause problems in plaintiff's back because "Brachial artery only affects the arm." Id.  He explained the Adson's test plaintiff took "does not show a chronic continuous lack of pulse.  It's only in certain positions." (R. 222).  He cited examples of three of his patients with fractured and "horribly deformed looking clavicles" who were not operated on because "they're doing okay and they're not in serious trouble." (R. 223).  He explained that surgery might have serious complications and that it will not be done unless there's a serious impairment.  Id.  He indicated his belief that because plaintiff's physicians are "not willing to do it indicates to me that they don't think your impairment is serious, severe." Id.  He explained that the brachial artery goes to the right arm and has nothing to do with breathing. Id.

-12-

The physician linked his testimony to the medical records, and the record supports his opinion.  Dr. Mendlick indicated that he had performed an Adson's test on plaintiff which was "reproducible on two or three different occasions." (R. 183).  No physician recommended surgery to correct the thoracic outlet syndrome.  Dr. Connelly stated that he was "not convinced that these symptoms represent thoracic outlet syndrome." (R. 184).  He specifically opined that he "would not recommend thoracic outlet decompression."  Id.

Although Dr. Steiner stated he is not a neurosurgeon and implied that he does not perform thoracic outlet surgery, that does not mean he is not qualified to testify as an expert regarding plaintiff's condition.  He gave no indication that he is not familiar with a condition such as plaintiff's.  In fact, he indicated that he has treated three patients with fractured clavicles.  He explained thoracic outlet syndrome in terms understandable to laymen such as plaintiff, the ALJ, and this court.

There is little law addressing the qualifications necessary to testify as a medical expert in situations such as this.  The Eighth Circuit Court of Appeals requires a case-by-case evaluation of expert testimony, and refused to exclude the opinion of an expert whose opinions had been rejected by

other courts.  <u>Harris v. Barnhart</u>, 356 F.3d 926, 930-31 (8th Cir. 2004).  "[A] medical expert is 'not disqualified from testimony because [his] practice speciality does not lie within the area of medicine reflected by claimant's impairment.'"  <u>Kepple v. Massanari</u>, 268 F.3d 513, 516 (7th Cir. 2001).

In an unpublished case before the Sixth Circuit, a medical expert testified that he had no particular expertise in multiple sclerosis, the area at issue, and that he referred his patients with MS to a neurologist.  <u>Tuohy v. Sec'y of Health and Human Serv.</u>, No. 93-1814, 1994 WL 454880, *7 (6th Cir. Aug. 22, 1994) (following <u>Sherrill v. Sec'y of HHS</u>, 757 F.2d 803 (6th Cir. 1985).  In that case, the expert's opinion contradicted the opinions of two treating physicians who specialized in MS and had opined that the claimant was disabled.  <u>Id.</u>  The court rejected the testimony of the medical expert and remanded the case for an immediate award of benefits.  <u>Id.</u> at *8.

Here, the medical expert's specialties may not be entirely coincident with the impairments at issue, but plaintiff cites to no evidence that a physician with specialties in internal medicine and cardiology is not qualified to opine thereon.  Moreover, the expert has treated

-14-

patients with similar injuries.  The expert testified as to his familiarity with the impairments at issue.  His opinion is consistent with, and supported by, progress notes of treating physicians.  The court finds no error in accepting testimony from the medical expert in this case.

**V.   ALJ Conduct**

An ALJ has no medical expertise and may not substitute her lay medical judgment for that of a physician.  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1022 (10th Cir. 1996).  Therefore, it is error for an ALJ to make a decision without support of substantial medical evidence in the record.  Here, the ALJ accepted the medical opinion of the medical expert and based her RFC assessment upon that opinion.  (R. 18).  As discussed above, the expert is qualified, there is no error in accepting his opinion, the evidence of record supports his opinion, and plaintiff has cited to no contrary evidence nor presented any admissible contrary evidence in the record.  Because the ALJ's determination is supported by the substantial medical evidence in the record, it is not "medically incorrect" as implied by plaintiff's arguments.

Plaintiff's claim that the ALJ was abusive (allowing her to speak only when spoken to) is a serious charge.  Because the ALJ failed to fully develop the record and thereby

prejudiced plaintiff, the court recommends remand for a
rehearing.

A Social Security hearing is a nonadversarial proceeding
the purpose of which is to allow the ALJ to inform herself
about facts relevant to the decision "and to learn claimant's
own version of those facts." Dixon v. Heckler, 811 F.2d 506,
510 (10th Cir. 1987) (quoting Heckler v. Campbell, 461 U.S.
458, 471, 471 n. 1 (1983) (Brennan, J., concurring)).  The
controlling inquiry in such instances is "whether the ALJ
asked sufficient questions to ascertain (1) the nature of a
claimant's alleged impairments, (2) what on-going treatment
and medication the claimant is receiving, and (3) the impact
of the alleged impairment on a claimant's daily routine and
activities." Musgrave v. Sullivan, 966 F.2d 1371, 1374-75
(10th Cir. 1992) (citing Carrier v. Sullivan, 944 F.2d 243,
245 (5th Cir. 1991)).

Reviewing the transcript of the hearing reveals plaintiff
often interrupted the medical expert, plaintiff testified in
long, convoluted narratives, and the ALJ tried to keep
plaintiff from interrupting and to keep her focused on the
specific question at hand.  (R. 214-45) (passim).  The ALJ
cautioned plaintiff on this issue six times during the
examination of the medical expert.  (R. 214, 216, 217, 219,

221, 225).  After observing plaintiff answer the medical
expert's questions and cross-examine the medical expert, the
ALJ noted that plaintiff likes to speak in very long narrative
sentences "and that is not the way I like to do things." (R.
227).  The ALJ noted that plaintiff had notes of what she
wanted to testify, and told plaintiff to just relate her
problems, and the ALJ would interrupt when she desired
clarification.  Id.

     Thereafter, the ALJ noted that plaintiff still had twenty
pages of notes and asked plaintiff to put it in letter form
and send it to her. (R. 230).  In the record, the court found
no letter from plaintiff dated after the hearing, and the
decision does not discuss any testimony received in letter
form.  After asking plaintiff to put her notes in letter form,
the ALJ attempted to focus plaintiff's testimony by directing
questions to plaintiff. (R. 230).  Plaintiff did not answer
the ALJ's questions directly, whereupon the following dialogue
ensued.

        Q    Okay, ma'am, ma'am?  You and I are having a
             little bit of a problem communicating.
        A    That's what I said, maybe it would be easier if
             I --
        Q    Sure.
        A    Because I can't --
        Q    I want you to write that all down --
        A    This is three years of information.  I can't
             give you the information in fifteen minutes.
        Q    Well, that's what I'm asking --

                              -17-

```
A    But I can't.
Q    Okay.  Well, let's just focus on the names of
     your doctors to make sure I have all the
     records, okay?
```

(R. 230-31).  Thereafter, plaintiff was either unable or

unwilling to focus and directly answer the questions asked.

The hearing degenerated into a verbal tug-of-war and the ALJ

changed her tactics again:

```
Q    Okay.  Ma'am, let's do something else.
A    I'm objecting.
Q    What do you want me to do, let you continue
     talking for five more minutes?
A    You're not letting me testify.
Q    I want to get some more information from you.
     But, okay, I don't want to interrupt your flow.
     Go ahead.
A    I mean you're not allowing me to testify.
Q    Please read your notes or do whatever you wish.
     Please go ahead.
A    I mean if you want to write --
Q    Ma'am, go ahead.
```

(R. 232-33).  The ALJ then allowed plaintiff to ramble on to

the end of her testimony with little interruption.  (R. 233-

38).  At the end of plaintiff's testimony, the ALJ did not ask

any further questions, and began examining the vocational

expert.  (R. 238-39).

The ALJ has authority to control the hearing.  <u>Rivera v.

Chater</u>, No. 95 CIV. 568 DLC, 1996 WL 374155, *14 (S.D.N.Y.

Jul. 2, 1996).  She may not, and the court finds that she did

not, stop plaintiff from presenting testimony.  However, she

must fully develop the record despite plaintiff's

intractability.  The ALJ knows what information is necessary
to a proper decision and must attempt to secure that
information.

Plaintiff has the right to appear and present her side of
the evidence.  Here, she obviously did not understand the
hearing process, did not understand what information was
necessary to the decision, and did not appear capable of
maintaining focus on the issues at hand.  The ALJ accepted
plaintiff's waiver of the right to representation and knew
that plaintiff must be allowed to present her case.  The ALJ
told plaintiff that she wanted to get more information from
plaintiff, but she did not tell plaintiff what information she
wanted.  She told plaintiff to put her testimony down in a
letter and mail it in, but she did not follow-up to secure the
letter, and made no comment in the decision regarding the
missing information.

At the hearing, no questions were asked regarding on-
going treatment and medication or the impact of the
impairments on plaintiff's daily activities.  The record
contains plaintiff's statement and recent medical treatment
forms, filed when she requested a hearing, but neither form
relates treatment or activities after January, 2004.  (R. 149-
54).  The decision discusses plaintiff's daily activities, but

-19-

cites only to forms completed by plaintiff in Sept. and Dec., 2002.  (R. 18) (citing Exs. 5e, 7E).

Perhaps the ALJ felt she was justified in making a decision without the required information because of plaintiff's intractability.  However, she made no discussion of plaintiff's intractability and made no finding that she had sought and was denied the necessary information.  The court recognizes that the record reveals problems dealing with plaintiff and securing the necessary information at the hearing.  However, there is no indication the ALJ told plaintiff specifically what additional information she needed. Moreover, she did not ask further questions at the end of plaintiff's testimony and seek to discover the missing information.  The pro se claimant must be excused for not knowing what information is required in making a disability decision.  The ALJ may not be excused for failing to adequately pursue the information.  The ALJ erred in failing to adequately develop the record or in failing to justify a decision based upon plaintiff's failure or refusal to provide necessary information.  The ALJ's failure prejudiced plaintiff and remand is necessary for a rehearing to properly develop the record.

**VI.  Immediate Award of Benefits and Punitive Damages**

Plaintiff seeks award of benefits and punitive damages. Whether to remand the case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)).

Where remand for additional fact-finding would serve no useful purpose, the court may order an immediate award. Sorenson v. Bowen, 888 F.2d 706, 713 (10th Cir. 1989). The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Here, the record has not been fully developed, and remand for a rehearing is necessary to develop the record. Therefore, the court will not direct an award of benefits.

The court's jurisdiction to review final decisions of the Commissioner of Social Security is controlled by the Social Security Act. Cordoba v. Massanari, 256 F.3d 1044, 1047 (10th Cir. 2001); Rosetti v. Sullivan, 788 F. Supp 1380, 1386 (E.D. Pa. 1992); 42 U.S.C. § 405(g). The Act provides that, "The

court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. (sentence four).  The court is without power to award punitive damages.  Marks v. Soc. Sec. Admin., 906 F. Supp. 1017, 1021 (E.D. Va. 1995); Ostroff v. Fla. Dep't of Health and Rehab. Serv., 554 F. Supp. 347, 351-52 (M.D. Fla. 1983).

**IT IS THEREFORE RECOMMENDED** that the decision be REVERSED and the case be REMANDED for rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g) in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of any further appeal.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 30th day of November 2005, at Wichita, Kansas.


s/John Thomas Reid

**JOHN THOMAS REID**
**United States Magistrate Judge**